LONG v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, Third Department.   November 13, 1901.)

NEGLIGENCE—PERSONAL INJURIES—ELEVATORS—OPEN DOORS.

> The doors of defendant's freight elevator were usually kept closed and latched.  Plaintiff was familiar with the premises, and knew that none but defendant's operator was permitted to run the elevator, and testified that he always had strict orders not to interfere with it.  There was evidence that he and his partner took a trunk to the building, and that the doors of the elevator were partially open, and that while his partner was looking for the operator plaintiff attempted to put the trunk in the elevator, and was injured.  The negligence alleged was leaving the doors unguarded.  *Held* to show no negligence on defendant's part authorizing submission of the question to the jury.

Appeal from trial term.

Action by William Long against the Mutual Life Insurance Company of New York.   From a judgment in plaintiff's favor, defendant appeals.   Reversed.

See 71 N. Y. Supp. 1140.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, and CHASE, JJ.

Marshall & Rebadow, for appellant.

Arthur W. Decker, for respondent.

KELLOGG, J.   It appears from the testimony in this case that defendant was the owner of a building in the city of Buffalo, the upper rooms of which were rented as offices; that for the convenience of occupants of the offices passenger elevators were provided, and also freight elevators, the entrance to the freight elevators being in the basement of the building, and the access to the rooms when freight was received was cut off by closed doors; and access to the freight elevators was further protected by doors which opened on hinges outward.   When fully opened, the entrance to the elevators was some six feet in width.   In front of the elevator was a sign, which has always been there:  "No one shall operate this elevator other than the employés."   It is not claimed that any one other than the employés of defendant had ever operated them, or attempted to do so.   It appears that an operator was not in constant attendance upon the freight elevator, owing to these elevators being only in occasional use; but a bell was provided for those admitted to the freight room, and desiring the use of the freight elevator, by means of which an operator was called.   The doors admitting to the elevator were usually kept closed and latched, but not locked.   Any one might open them.   The plaintiff was familiar with the premises, and knew that no one but the defendant's operator was permitted to interfere with the elevator.   He had aided in carrying trunks and freight often by means of these elevators.   He was, as witness, asked this question:  "You always got strict orders you were not to interfere with the elevator or try to run it?"  Answer:  "I did."   He says he had often to wait for the operator to come.   He does not say that he ever before tried to put a trunk or any freight upon the

elevator until the operator came to supervise it, or to direct into which of the freight elevators to place it. On the day of the accident the plaintiff and his partner took to the building a large sample trunk, weighing 200 to 250 pounds. They were admitted into the freight room. The operator was absent. The bell was rung, and plaintiff's partner or employer, setting down the trunk in front of the elevator, said to plaintiff, "You stay here, and I will go out and get the janitor" (meaning the operator of the elevator), and then went in search of the operator. The plaintiff says the door admitting to one of the elevators was partly open,—nearly two feet,—but not wide enough to admit of the trunk; that he opened the door wider, and immediately attempted to roll the trunk in. This he was unable to do, and he then entered the elevator, and attempted to pull the trunk in. While making these efforts, for some unknown cause, the elevator moved upward, and he was caught by his feet between the elevator floor and floor above, and injured. There is no question raised respecting the proper construction and proper repair of the elevator. The court instructed the jury that defendant could not be found negligent in not furnishing a safe elevator. It was a safe appliance. It does not appear that any failure of defendant to furnish an operator in constant attendance was to be considered negligence. The charge of the court to the jury was very lengthy, and resolved itself around the general proposition that, if the defendant was in any respect negligent, and plaintiff was not negligent, the jury should find for plaintiff. It seems to have been left for the jury to discover wherein defendant was negligent. It was apparently submitted to the jury whether it was not the duty of defendant to keep the door of the freight elevator closed when not in use; and, if they so found, they should find for plaintiff. The complaint charges defendant with negligence in two particulars, and in two only. One is the furnishing of a defective, unsafe, and out of repair freight elevator. This charge, the court said, was not proven, and the court took away its consideration from the jury; and in this, we think, the court committed no error. The other charge of negligence is that defendant did "negligently and carelessly permit the said elevator door to remain open and unguarded in the basement of said building." If this were a case of one falling down the elevator shaft because of an open and unguarded door, the open door might be a material feature, because it might then be regarded as the approximate cause of the accident. But to the plaintiff in this case the open door, or door partly open, was no menace. It was to him in no sense dangerous. He saw it partly open. The dangers beyond the open door he himself invited by opening the door wider, and undertaking to possess himself of the elevator and all the dangers accompanying such possession. The plaintiff's knowledge by previous use, of these freight elevators; the positive instructions given to him not to interfere with the elevators; that only employés of defendant had a right to operate them; the operator known to plaintiff to be absent,—how could a partly open door, under such facts and circumstances, be interpreted as an invitation to plaintiff to take possession of the elevator, and load it with his freight? I

see no single fact or circumstance in this case which can be said to in any degree authorize the plaintiff to so possess himself of the elevator in the operator's absence. The cases cited by the learned counsel for respondent of passenger elevators with open doors have no application here. The facts and circumstances and usage are entirely different. There was no question for the jury, and the action should have been dismissed on defendant's motion.

The judgment is reversed, and a new trial granted, with costs to appellant to abide the event. All concur.